UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:23-cv-61131-LEIBOWITZ/STRAUSS

SARAH ISRAEL,

   *Plaintiff*,

v.

GRAND PEAKS PROPERTY
MANAGEMENT,

   *Defendant*.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS MATTER** is before the Court upon Defendant Grand Peaks Property Management, Inc.'s ("Grand Peaks" or "Defendant") Motion for Summary Judgment [ECF No. 59] (the "Motion"). Having reviewed the Motion, all supporting and opposing submissions, the record, and being otherwise duly advised in the premises, the Motion is **GRANTED** for the reasons set forth below.

I.   **BACKGROUND**

Grand Peaks is a property management company that leases multifamily apartments and manages residential communities, including the Solero at Plantation ("Solero"), in Plantation, Florida. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 1]. Plaintiff Sarah Israel ("Ms. Israel" or "Plaintiff") interviewed with Grand Peaks for an assistant community manager position. [ECF No. 61-1, Dep. of Sarah Israel at 75:17–76:5]. This position did not require Saturday work. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 10]. Ms. Israel did not want to work on weekends, particularly Saturdays, because of her "belief." [ECF No. 61-1, Dep. of Sarah Israel at

69:18–21, 76:12–14]. Grand Peaks advised Ms. Israel that no such roles were open at the time of her interview but that they regularly become available, with notifications sent via email, and that she could apply to them. [*Id.* at 76:2–21]. Indeed, Grand Peaks believed that Ms. Israel was qualified for an assistant community manager position. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 9]. Additionally, Ms. Israel received emails notifying her of managerial openings in South Florida. [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 6–11, Exs. 2, 3]; [ECF No. 69-2, Decl. of Patrick Hutchinson ¶¶ 3–10, Exs. 1, 2].

In August 2022, Ms. Israel accepted a position at Grand Peaks as a full-time leasing consultant at Solero, with the understanding that the position required Saturday work. [ECF No. 69-1, Dep. of Sarah Israel at 76:22–77:2]; [ECF No. 61-1, Dep. of Sarah Israel at 79:25, 187:1–4, pgs. 33–34 (Grand Peaks' job description for leasing consultants reflecting Saturday-work requirement, signed by Ms. Israel)].

On September 6, 2022, Grand Peaks had an assistant community manager position open at one of its South Florida locations. [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 6–8, Ex. 2]. Ms. Israel received an email notifying her of the opening on her Grand Peaks' email account and forwarded the email to her personal email account. [ECF No. 69-2, Decl. of Patrick Hutchinson ¶¶ 3–10, Exs. 1, 2]. She did not, however, apply to the open position. [ECF No. 61-5, Decl. of Kiley Niziol ¶ 8].

On September 19, 2022, Ms. Israel emailed Grand Peaks' Human Resources stating that her "weekend needs to be off." [ECF No. 70, Joint Statement of Undisputed Facts ¶ 4]. In her email, Ms. Israel described her family as being "very religious," including their observance of the Sabbath. [*Id.*]. Grand Peaks asked Ms. Israel to complete an accommodation form, and she did so. [*Id.* ¶ 7–8]. Grand Peaks' initial response to this request was to offer Ms. Israel one Saturday

off per month, but Ms. Israel did not find this to be adequate. [ECF No. 69-1, Dep. of Sarah Israel at 213:5–17].

On September 29, 2022, Solero's community manager announced the schedules for Solero employees for the period between October 1, 2022, and November 7, 2022. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 12]. Per the schedule, Ms. Israel had Saturday, October 1, 2022, off, but she was scheduled to work all other Saturdays during that period. [*Id.*]. Ms. Israel did not show up for any of those scheduled Saturday shifts. [*Id.* ¶¶ 13, 15–16, 18, 20]. She did, however, show up to work on her scheduled days off without seeking prior approval and was paid for that time. [*Id.* ¶ 14]; [ECF No. 61-1, Dep. of Sarah Israel at 225:23–227:3]; [ECF No. 61-3, Dep. of Patrick Hutchinson at 22:4–10, 33:1–3].

During that schedule period, on October 17, 2022, Grand Peaks sent out another email announcing an opening for another assistant community manager position in South Florida, which was sent to Ms. Israel's Grand Peaks email account. [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 9–10, Ex. 3]; [ECF No. 69-2, Decl. of Patrick Hutchinson ¶¶ 9–10]. According to Ms. Israel, this opening would have also been posted on the company's website. [ECF No. 62-1 ¶ 6]. But she did not apply to this position. [ECF No. 61-5, Decl. of Kiley Niziol ¶ 11]. Ms. Israel also rejected Grand Peaks' offer of alternative positions that did not require Saturday work because of a potentially longer commute. [ECF No. 61-1, Dep. of Sarah Israel at 227:15–22, 228:11–17]; [ECF No. 61-2, Decl. of Patrick Hutchinson ¶¶ 33–34, Exs. 2, 3].

Ultimately, on November 11, 2022, Grand Peaks terminated Ms. Israel "for failing to report for work, as well as consistently working overtime without permission[.]" [ECF No. 70, Joint Statement of Undisputed Facts ¶ 22]; [ECF No. 61-3, Dep. of Patrick Hutchinson at 33:1–3]. The instant lawsuit followed, wherein Ms. Israel asserts that Grand Peaks discriminated against her

3

because of her religion by failing to provide a reasonable accommodation for her religious beliefs.[1] [ECF No. 28].

## II. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment "bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Those materials may include, "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark*, 929 F.2d at 608.

If the moving party meets its burden, the non-moving party is then required "to go beyond the pleadings" and present competent evidence "showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. Generally, "[t]he mere existence of a scintilla of evidence" supporting the non-movant's case is insufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). If, in response, the non-moving party does not sufficiently support an essential element of his case as to which he bears the burden of proof, summary judgment is appropriate. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 840 (11th

---

[1] Ms. Israel's religious discrimination claim, asserted in Count I of the Second Amended Complaint, is the only remaining Count at issue following the Court's dismissal with prejudice of her claims of race discrimination (Count II) and color discrimination (Count III). [ECF No. 35].

4

Cir. 2000). A fact is "material" for these purposes if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of fact is "genuine" if, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "In determining whether genuine issues of material fact exist, [the reviewing court] resolve[s] all ambiguities and draw[s] all justifiable inferences in favor of the non-moving party." *Rice-Lamar*, 232 F.3d at 840 (citing *Anderson*, 477 U.S. at 255). However, when the record "taken as a whole" could not support a reasonable finding for the non-movant, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

Grand Peaks argues that it is entitled to summary judgment on Ms. Israel's religious discrimination claim under Title VII because: (1) it offered her reasonable accommodations that eliminated the conflict between Ms. Israel's job duties and her religious beliefs; (2) Ms. Israel's preferred accommodations would have caused an undue burden on Grand Peaks' business; and (3) Ms. Israel has not produced enough circumstantial evidence to warrant an inference of, and thus triable issue of, religious discrimination. [*See* Mot. at 4–18]. In response, Ms. Israel contends that summary judgment is precluded because genuine issues of material fact remain as to whether: (1) Grand Peaks offered her a reasonable accommodation; (2) accommodating her would have caused an undue burden on Grand Peaks; and (3) Grand Peaks' termination of Ms. Israel was pretextual. [*See* Resp. at 4–11]. As discussed more fully below, the Court finds that Grand Peaks is entitled to summary judgment because it offered Ms. Israel a reasonable accommodation and because Ms. Israel has not presented sufficient circumstantial evidence for her religious discrimination claim to proceed to trial.

### A. Grand Peaks Offered Ms. Israel a Reasonable Accommodation

"The term 'religion' in Title VII's prohibition against religious discrimination 'includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observation or practice without undue hardship on the conduct of the employer's business.'" *Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021) (quoting 42 U.S.C. § 2000e(j)).

For Ms. Israel to establish a reasonable-accommodation claim of religious disparate treatment, she "must first set forth a *prima facie* case by showing that (1) h[er] sincere and bona fide religious belief conflicted with an employment requirement, and (2) h[er] employer took adverse employment action against h[er] because of h[er] inability to comply with the employment requirement or because of the employer's perceived need for h[er] reasonable accommodation." *Id.* Here, because neither party addresses whether Ms. Israel met her burden of establishing a *prima facie* case, and because her position is premised specifically on her contention that she was *not* offered a reasonable accommodation, the Court assumes without deciding that Ms. Israel could establish a *prima facie* case and turns to the issue of reasonable accommodation.

"Once a plaintiff makes out a *prima facie* case, the burden shifts to the employer to show that it either offered a reasonable accommodation or that it cannot reasonably accommodate the employee's religious practice without undue hardship on its business." *Id.* "If an employer establishes that it offered a reasonable accommodation for the employee's religious practice, it is entitled to judgment in its favor. The employer has no further obligation to offer an employee's preferred accommodation or to demonstrate that an employee's preferred accommodation would cause an undue hardship." *Id.* (citation omitted).

6

"A reasonable accommodation eliminates the conflict between employment requirements and religious practices." *Id.* at 1276 (citation and internal quotation marks omitted). "Although [courts] evaluate offered accommodations on a case-by-case basis, whatever else may qualify, a transfer to a 'comparable position' that removes the conflict between the policy and the religious practice, and reasonably preserves the employee's terms, conditions, or privileges of employment, satisfies the reasonable-accommodation requirement." *Id.* (citations omitted).

Here, Grand Peaks asserts that the summary judgment record shows it offered Ms. Israel *two* reasonable accommodations: (1) the opportunity to apply for a managerial position that did not require work on Saturdays; and (2) the option to remain in her current position, but allowing her to find coverage for her Saturday shifts and guaranteeing one Saturday off each month. [*See* Mot. at 4–11]. Ms. Israel argues that genuine issues of fact remain as to whether Grand Peaks indeed offered these accommodations to her. [*See* Resp. at 4–6].[2] Notwithstanding Ms. Israel's arguments to the contrary, however, the record conclusively establishes that Grand Peaks offered her a reasonable accommodation by allowing her the opportunity to apply for managerial positions that eliminated the need to work on Saturdays.[3] [ECF No. 61-1, Dep. of Sarah Israel at 76:2–21]; [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 6–11, Exs. 2, 3].

---

[2] Regarding the shift-swapping accommodation, Ms. Israel admits that Grand Peaks allowed her to switch Saturday shifts but challenges Grand Peaks' argument that she did not try to find coverage. [Resp. at 5–6]; [ECF No. 62-1 ¶ 14]. Ms. Israel asserts that despite finding coverage for her Saturday shifts, Grand Peaks still did not honor her observance of the Sabbath and, therefore, the shift-swapping accommodation fell short of Title VII's requirements. [Resp. at 5–6].

[3] The pertinent consideration is whether the employer offered *a* reasonable accommodation. *See Beadle v. Hillsborough Cnty. Sheriff's Dep't*, 29 F.3d 589, 592 (11th Cir. 1994) ("Title VII does not require an employer to give an employee a choice among several accommodations; nor is the employer required to demonstrate that alternative accommodations proposed by the employee constitute undue hardship. Rather, the inquiry ends when an employer shows that a reasonable accommodation was afforded the employee, regardless of whether that accommodation is one which the employee suggested.").

Relevant to this determination, the parties agree that an employer's offering of an alternative position that eliminates the religious conflict is a reasonable accommodation as a matter of law. [*See* Mot. at 7] ("The Eleventh Circuit consistently has held that a transfer to a comparable position that eliminates the conflict and reasonably preserves the employee's conditions of employment is a reasonable accommodation." (citing *Walden v. Centers for Disease Control & Prevention*, 669 F.3d 1277, 1294 (11th Cir. 2012) (finding that an employer's offer of help to the employee in obtaining a new position is a reasonable accommodation as a matter of law), *abrogated on other grounds by EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015)); [Resp. at 6] ("[T]he availability of alternative positions that would accommodate religious beliefs can be a reasonable accommodation.") (citing *Walden*, 669 F.3d at 1294)). Such is the case here.

More specifically, Ms. Israel was aware that assistant community manager positions within the company that did not require Saturday work regularly became available. [ECF No. 61-1, Dep. of Sarah Israel at 76:15–21]. Not only did these positions not require work on Saturdays, they also would have been a promotion for Ms. Israel that came with increased pay. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 11]. Ms. Israel originally interviewed with Grand Peaks for this same type of position. [ECF No. 61-1, Dep. of Sarah Israel at 75:17–76:5]. Ms. Israel was encouraged to apply for these positions as they became available. [*Id.* at 76:15–21]. Grand Peaks believed she was qualified for these positions. [ECF No. 70, Joint Statement of Undisputed Facts ¶ 9]. Ms. Israel received emails notifying her of such openings in South Florida. [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 6–11, Exs. 2, 3]; [ECF No. 69-2, Decl. of Patrick Hutchinson ¶¶ 3–10, Exs. 1, 2]. On at least one occasion, Ms. Israel forwarded one of these emails from her Grand Peaks email account to her personal email account. [ECF No. 69-2, Decl. of Patrick Hutchinson

8

¶¶ 6–8, Ex. 1]. Despite this, Ms. Israel did not apply to these managerial openings. [ECF No. 61-2, Decl. of Patrick Hutchinson ¶ 36]; [ECF No. 61-5, Decl. of Kiley Niziol ¶¶ 8,11].

In addition, Grand Peaks offered Ms. Israel alternative positions that did not require Saturday work despite her being at the company for less than six months, but Ms. Israel expressly *rejected* these offers based on the potential for a longer commute. [ECF No. 61-1, Dep. of Sarah Israel at 227:15–22, 228:11–17]; [*see also* ECF No. 61-2, Decl. of Patrick Hutchinson ¶¶ 33–34, Exs. 2, 3 (showing undisputed Google Maps commute times reflecting Ms. Israel's commute from her residence to Solero was between 20 to 40 minutes for a 9:00 a.m. weekday arrival, and her commute to Grand Peaks' Palm Beach Preserve in West Palm Beach, Florida, was between 55 to 90 minutes for the same arrival time)].[4] Grand Peaks' offers of these alternative positions triggered Ms. Israel's "duty to make a good faith attempt to accommodate [her] religious needs through means offered by the employer." *Beadle*, 29 F.3d at 593. On this summary judgment evidentiary record, Ms. Israel plainly has failed to satisfy this duty.

In her Response, Ms. Israel attempts to create genuine issues of material fact as to the above evidentiary record by exclusively relying upon her affidavit attached to the Response. [*See* Resp. at 6]; [*see also generally* ECF No. 62-1]. Through this affidavit, Ms. Israel argues that substantial factual disputes remain because (1) she was never informed of managerial openings within Grand Peaks and, (2) even if she was informed, Grand Peaks would not have transferred her to another position because its policies required her to have more than six months' experience to be eligible

---

[4] Importantly, the Eleventh Circuit has upheld accommodations as reasonable even when they involve longer commute times. *See Telfair v. Fed. Express Corp.*, 567 F. App'x 681, 684 (11th Cir. 2014) (finding employer's offering of different positions to be reasonable accommodation as a matter of law despite requiring longer commute and resulting in lower pay).

9

for a transfer. Resp. at 6.[5] These contentions, however, are blatantly contradicted by Ms. Israel's own prior testimony and other documentary evidence. [*See* ECF No. 61-1, Dep. of Sarah Israel at 227:9–22 (acknowledging receipt of October 2022 email, less than six months into her employment, that indicated that she was offered alternative positions that did not require Saturday work but turned them down)]; [ECF No. 69-2, Decl. of Patrick Hutchinson, Ex. 1 (forwarded email from Ms. Israel's Grand Peaks' email account to her personal email account regarding a managerial opening within Grand Peaks)]. Ms. Israel's self-serving affidavit therefore falls short of creating a genuine issue of material fact necessary to preclude summary judgment. *See Morton v. Kirkwood*, 707 F.3d 1276, 1284 (11th Cir. 2013) ("[W]hen documentary evidence 'blatantly contradicts' a plaintiff's account ... a court should not credit the plaintiff's version on summary judgment." (quoting *Witt v. W. Va. State Police*, 633 F.3d 272, 276–77 (4th Cir. 2011))); *see also Johnson v. Niehus*, 491 F. App'x 945, 949 (11th Cir. 2012) (explaining that a court need not credit self-serving evidence "which is blatantly contradicted by the record, so that no reasonable jury could believe it") (quotation omitted); *Vicks v. Knight*, 380 F. App'x 847, 852 (11th Cir. 2010) (affirming summary judgment because "a reasonable factfinder could not believe" the non-movant's assertions that were "contradicted by all of the relevant evidence, with the exception of his own affidavit").

Accordingly, based on the above factual predicate and Eleventh Circuit caselaw, the Court finds that Grand Peaks' proffered accommodation of alternative positions that eliminated Ms.

---

[5] Despite asserting that she was never informed of any openings, Ms. Israel admits in her affidavit that openings within Grand Peaks are posted on the company's website. [ECF No. 62-1 ¶ 6].

Israel's religious conflict was reasonable as a matter of law, thus satisfying Title VII's reasonable-accommodation provision.[6]

### B. Ms. Israel Has Not Presented Enough Circumstantial Evidence of Discrimination[7]

An employer's discriminatory intent can be shown with "circumstantial evidence through either the *McDonnell Douglas* burden-shifting framework or by producing enough circumstantial evidence to raise a reasonable inference of, and thus triable issue of, intentional discrimination." *Shedrick*, 941 F. Supp. 2d at 1366 (citing *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1320 (11th Cir. 2012)).  Under *McDonnell Douglas*:

> [T]he plaintiff bears the initial burden of establishing a *prima facie* case of discrimination by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated "similarly situated" employees outside her class more favorably.
>
> If the plaintiff succeeds in making out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions.
>
> Finally, should the defendant carry its burden, the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for unlawful discrimination, an obligation that merges with the plaintiff's ultimate burden of persuading the factfinder that she has been the victim of intentional discrimination.

---

[6] Because the Court finds that Grand Peaks offered Ms. Israel a reasonable accommodation, it need not determine whether Ms. Israel's preferred accommodation would have placed an undue burden on Grand Peaks' business.  *See Camara v. Epps Air Serv., Inc.*, 292 F. Supp. 3d 1314, 1326 (N.D. Ga. 2017) ("A court does not address undue hardship if the employer offers [a] reasonable accommodation."), *abrogated on other grounds by Groff v. DeJoy*, 600 U.S. 447 (2023); *see also Morrissette–Brown v. Mobile Infirmary Med. Ctr.*, 506 F.3d 1317, 1324 n.7 (11th Cir. 2007) (finding that because the district court found that the employer had reasonably accommodated the employee's religious practices, it was unnecessary to discuss undue hardship).

[7] "A plaintiff may prove a claim of intentional discrimination under Title VII through direct evidence, through circumstantial evidence, or through statistical proof."  *Shedrick v. Dist. Bd. of Trustees of Miami-Dade Coll.*, 941 F. Supp. 2d 1348, 1366 (S.D. Fla. 2013) (citing *Rioux v. City of Atlanta*, 520 F.3d 1269, 1274 (11th Cir. 2008)).  Ms. Israel has not attempted to prove discrimination here through direct evidence or statistical proof; therefore, this Court will only analyze whether she has shown discrimination through circumstantial evidence.

*Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (*en banc*) (citations and internal quotation marks omitted).

        1. *Prima Facie* Case of Discrimination

Ms. Israel has not met her initial burden of establishing a *prima facie* case of discrimination because she has not shown that Grand Peaks treated similarly situated employees outside her class more favorably. These employees must be "similarly situated in all material respects." *Id.* at 1231. The inquiry turns "not on formal labels, but rather on substantive likeness." *Id.* at 1228. Factors courts consider include, but are not limited to, whether the individual: (1) "engaged in the same basic conduct (or misconduct) as the plaintiff"; (2) was "subject to the same employment policy, guideline, or rule as the plaintiff"; (3) was "under the jurisdiction of the same supervisor as the plaintiff"; and (4) "share[d] the plaintiff's employment or disciplinary history. *Id.* at 1227–28.

Here, Ms. Israel asserts that she was not treated similarly to her fellow leasing consultants, Carlos, Ana, and Katherine, because they were never warned, neither verbal nor written, for not excelling in their performance as much as Ms. Israel did. [ECF No. 62-1 ¶ 37]. This argument is nonsensical. That Ms. Israel's coworkers may not have performed as well as she did does not necessarily mean that they were failing to meet Grand Peaks' performance expectations for leasing consultants. In any event, this comparison has no bearing on the similarly situated analysis because these employees did not engage in the same misconduct Ms. Israel was fired for. To be clear, there is no evidence in the record that these employees failed to report to their scheduled shifts or came to work on their scheduled days off without first asking for supervisor approval. Their situation was therefore not similar in all material respects to Ms. Israel's.

Ms. Israel also contends that she was not treated similarly to the assistant community manager, Cheri, because Cheri was never reprimanded for her tardiness or for her reporting to

work on days she was not scheduled. [*Id.* at ¶¶ 23, 37]. Although closer aligned with Ms. Israel's situation than the above leasing consultants, Cheri's situation is nonetheless distinguishable. First, Cheri was an assistant community manager who was not required to work on Saturdays, unlike Ms. Israel who was a leasing consultant required to work those days. Second, Cheri's alleged tardiness falls well short of the level of misconduct Ms. Israel engaged in by totally and repeatedly failing to report to work as scheduled. Third, Ms. Israel conceded that Cheri obtained permission from her supervisor, the community manager, prior to reporting to work on days she was not scheduled to come in. [ECF No. 61-1, Dep. of Sarah Israel at 216:14–19, 225:14–22]. Critically, Ms. Israel did not ask for similar permission prior to reporting to work on her days off; she just showed up. [*Id.* at 225:23–227:3]; [ECF No. 61-3, Dep. of Patrick Hutchinson at 22:4–10, 33:1–3]. Cheri's situation was therefore not similar in all material respects to Ms. Israel's.

2. Legitimate Reason for Termination and Pretext

Even if Ms. Israel were able to establish a *prima facie* case, Grand Peaks has met its burden of "articulat[ing] a legitimate, nondiscriminatory reason for its actions." *Lewis*, 918 F.3d at 1221. "Because the employer's burden is one of *production*—not persuasion—the employer 'need not persuade the court that it was *actually* motivated by the proffered reason[.]'" *Kidd v. Mondo Am. Corp.*, 731 F.3d 1196, 1205 (11th Cir. 2013) (emphasis in original) (quoting *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (*en banc*)). Grand Peaks' reason "need only be specific enough so that the plaintiff is afforded a full and fair opportunity to demonstrate pretext." *Id.* (internal quotations and citation omitted).

Here, the record supports that Grand Peaks had legitimate, nondiscriminatory reasons for terminating Ms. Israel. According to Grand Peaks, Ms. Israel "was fired for failing to report for work, as well as consistently working overtime without permission[.]" [ECF No. 61-3, Dep. of

13

Patrick Hutchinson at 33:1–3]. Indeed, Grand Peaks fired Ms. Israel only after she failed to make her required good-faith effort to avail herself of the reasonable accommodation Grand Peaks offered to her. *See* discussion *supra* Part III.A.; *see also Beadle*, 29 F.3d at 593 (holding that an employee's termination for refusing to work his Sabbath was not discriminatory because the employee did not make a good faith effort to take advantage of the employer's reasonable accommodation), *abrogated on other grounds by Groff*, 600 U.S. at 473; *Walden*, 669 F.3d at 1294 (recognizing that the employer's offer of a reasonable accommodation triggers the employee's duty to make a good-faith attempt to accommodate her needs through the employer's offered accommodation).

Thus, the burden shifts back to Ms. Israel to introduce evidence "sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Kidd*, 731 F.3d at 1205 (citation omitted). In doing so, Ms. Israel must confront Grand Peaks' seemingly legitimate reason for her termination "head on and rebut it." *Id.* at 1206 (citation and internal quotations omitted). Ms. Israel "cannot succeed by simply quarreling with the wisdom of that reason." *Id.* (citation and internal quotations omitted). Ms. Israel may demonstrate Grand Peaks' reasons were pretextual by "revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [Grand Peaks'] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.*, 509 F.3d 1344, 1348 (11th Cir. 2007) (citation and internal quotations omitted). "A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (emphasis in original) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)) (internal quotations omitted).

Importantly, "[i]f the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether *each* of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim." *Chapman*, 229 F.3d at 1024–25 (emphasis added).

Ms. Israel offers several arguments to show that Grand Peaks' proffered reasons were pretextual. [Resp. at 9–11] (attempting to establish pretext by arguing, based on her deposition testimony and affidavit, that: (1) she was a top performer; (2) Grand Peaks did not uniformly enforce its policies by allowing Cheri to make up hours on weekends; (3) Grand Peaks initially did not require her to work on Saturday but later changed its decision; (4) Saturdays were not Grand Peaks' busiest day; (5) she arranged coverage for her Saturday shifts; and (6) Grand Peaks terminated her shortly after she requested a religious accommodation). The Court addresses each of these in turn.

First, even if Ms. Israel was Grand Peaks' top performer, this did not absolve her from her admitted and repeated failures to report to work as scheduled or from showing up to work on her scheduled days off without first asking for supervisor approval, which are the two reasons Grand Peaks fired her.

Second, Ms. Israel's assertion that Grand Peaks did not uniformly enforce its policies because Cheri was allowed to make up hours on weekends is without merit. As discussed above, Ms. Israel's assertion is unsupported by the record, which instead establishes that, unlike Ms. Israel, Cheri asked for permission prior to showing up on her days off.

Third, Ms. Israel understood that the leasing consultant position required Saturday work but accepted the job anyway. [ECF No. 69-1, Dep. of Sarah Israel at 76:22–77:2]; [ECF No. 61-1, Dep. of Sarah Israel at 187:1–4, pgs. 33–34].

15

Fourth, regardless of whether Saturday was Grand Peaks' busiest day, it was nonetheless a required workday for leasing consultants. [ECF No. 61-1, Dep. of Sarah Israel at 187:1–4, pgs. 33–34 (Grand Peaks' job description for the leasing consultant position reflecting Saturday-work requirement, signed by Ms. Israel)]. Moreover, even if Saturdays being slow somehow relinquished Ms. Israel's obligation to report to work, which it did not, it certainly did not excuse her admitted practice of showing up to work on her days off without seeking supervisor approval.

Fifth, Ms. Israel's assertion that she arranged coverage for her Saturday shifts, [ECF No. 62-1 ¶ 15], is blatantly contradicted by her prior testimony. [ECF No. 61-1, Dep. of Sarah Israel at 216:12–19 (stating that she did not need to seek coverage), 222:13–25 (stating that she did not try to find coverage), 225:6–18 (stating that she does not remember whether she arranged coverage)]. Even if she did, again, her arrangement of coverage in no way addresses her showing up to work on her days off without approval.

Sixth, particularly because Ms. Israel's preceding arguments are without merit, evidence of temporal proximity "alone is insufficient to survive summary judgment." *Mohammed v. Jacksonville Hospitalists, P.A.*, 712 F. App'x 872, 880 (11th Cir. 2017). In any event, temporal proximity does not directly rebut either of Grand Peaks' given reasons for Ms. Israel's termination. In sum, Ms. Israel has not presented sufficient evidence to create a triable issue of fact regarding pretext.[8]

---

[8] Nor has Ms. Israel ultimately presented a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328–29 (11th Cir. 2011) (internal quotations and citations omitted). The record simply lacks evidence showing that Grand Peaks intentionally discriminated against Ms. Israel because of her religion. Rather, as discussed above, the record clearly shows that Grand Peaks offered a reasonable accommodation to Ms. Israel for her religious beliefs, but she rejected or otherwise failed to avail of herself of that accommodation, after which Grand Peaks terminated her for failing to report to work as scheduled and/or for showing up to work on days she was not scheduled without seeking prior approval.

Accordingly, summary judgment must be granted in favor of Grand Peaks as to Ms. Israel's Title VII religious discrimination claim.

## IV.   CONCLUSION

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that:

1. Defendant's Motion [**ECF No. 59**] is **GRANTED**.

2. Summary judgment is hereby entered in favor of Defendant on Count I of Plaintiff's Second Amended Complaint.

3. The Clerk of Court is directed to **CLOSE** this case.  All pending deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot.

**DONE AND ORDERED** in the Southern District of Florida on October 21, 2024.



DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:   counsel of record